# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ACI WORLDWIDE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CHURCHILL LANE ASSOCIATES, LLC, <br><br> Defendant. | 8:14CV249 <br><br> ORDER |

Plaintiff, ACI Worldwide Corp. ("ACI") filed this action for a declaratory judgment to determine the rights and legal responsibilities of ACI and Defendant, Churchill Lane Associates, LLC ("Churchill"), under a Licensing Agreement. (Filing No. 1). Previously, Chief Judge Smith Camp granted ACI's Motion for Summary Judgment, denied Churchill's Motion for Partial Summary Judgment, and dismissed all of Churchill's counter-claims. (Filing No. 110). Churchill appealed the judgment to the Eighth Circuit Court of Appeals, which affirmed the judgment in part, and in part reversed and remanded the case for further proceedings. (Filing No. 115).

Now that the case has been remanded, ACI requests that the Court grant its "Motion to Amend Complaint and Answer to Defendant's Counterclaim" (Filing No. 81), which ACI filed after the parties filed their summary judgment motions, but before Chief Judge Smith Camp entered judgment in ACI's favor. The Court never explicitly ruled on the motion to amend. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In February 2001, ACI and Nestor, Inc. ("Nestor") entered into a Licensing Agreement, under which ACI was permitted to use and sub-license portions of a suite of software products developed by Nestor. ACI used the licensed software technology to develop new software programs, which ACI then licensed to its customers. Per the Licensing Agreement, Nestor owned any new technology developed by ACI. In exchange, ACI agreed to pay Nestor periodic royalties. (Filing No. 109 at p. 2; Filing No. 115 at p. 2).

In 2002, due to Nestor's financial difficulties, Nestor and ACI executed Amendment 2 to the License Agreement, assigning Nestor's right to the royalties to Churchill, an entity formed by Nestor investors. Nestor and Churchill entered into agreements wherein Nestor (1) irrevocably

assigned to Churchill the future royalties due to Nestor under the Licensing Agreement, and (2) promised not to modify or terminate the Licensing Agreement without Churchill's consent. ACI received notice of the assignment and began remitting the royalties directly to Churchill. Further amendments were made to the Licensing Agreement in 2007 and 2008. (Filing No. 109 at pp. 3-4; Filing No. 115 at pp. 2-3).

In 2009, Nestor became insolvent and went into receivership. A court appointed receiver sold all of Nestor's rights in the Licensing Agreement and the licensed software technology to American Traffic Solutions ("ATS"), and on July 20, 2014, ACI purchased from ATS all of Nestor's remaining rights, title, and interest in the licensed software technology and the Licensing Agreement. On July 21, 2014, ACI unilaterally terminated the License Agreement. ACI subsequently sent Churchill a notice that the royalty obligations assigned to Churchill were no longer in effect, and enclosed a check representing the full and final payment for the balance of royalties due. Churchill did not consent to the termination and informed ACI that Churchill was still entitled to further royalties. (Filing No. 109 at p. 6; Filing No. 115 at p. 4).

On August 20, 2014, ACI filed this action for a declaratory judgment, asking the Court to declare that: (1) ATS's assignment to ACI was valid and enforceable; (2) ACI owns the Licensed Software Technology free and clear of any claim or right of Churchill; (3) ACI is the proper assignee of and successor Licensor under the Licensing Agreement, free and clear of any claim or right of Churchill; (4) ACI validly terminated the Licensing Agreement effective July 21, 2014; (5) ACI tendered timely, final, and full payments of all amounts due to Churchill under the Licensing Agreement and no new amounts can become due; (6) Churchill is a non-party to the Licensing Agreement and does not have standing to challenge the assignment of the Software or the assignment and termination of the Licensing Agreement; and (7) any other relief the Court deems just and equitable. (Filing No. 1).

Churchill asserted several affirmative defenses and counter-claims. (Filing No. 11). Churchill's counter-claims for declaratory relief asked the Court to rule that: (1) the Licensing Agreement was not terminated and that ACI remains obligated to pay royalties to Churchill; (2) Churchill is due an accounting of the royalties outstanding per the terms of the Licensing Agreement; (3) ACI must pay all royalties due under the Licensing Agreement; (4) Churchill is entitled to Royalties on any fees paid to ACI or its affiliates for license or maintenance of the Licensed Software Technology or any part of the new technology; and (5) even if the Licensing

Agreement was terminated, Churchill is still owed royalties on any sublicenses which may have been effected with respect to ACI and any third parties prior to the termination of the Licensing Agreement. (Filing No. 11 at pp. 6-9).

On April 8, 2015, Churchill moved for partial summary judgment, asking the Court to find that Churchill is a party to the Licensing Agreement and that ACI could not terminate the Licensing Agreement without the consent of Churchill. (Filing No. 30). On August 14, 2015, ACI filed a Motion for Summary Judgment, asking the Court to enter judgment in ACI's favor on those matters for which ACI sought declaratory judgment in its Complaint. (Filing No. 58).

While both summary judgment motions were pending, on November 13, 2015, ACI filed the present motion to amend its Complaint and Answer to Churchill's Counterclaim. (Filing No. 81). ACI's proposed amended pleadings seek to, among other changes: add a claim of unjust enrichment due to Churchill's alleged self-dealing and improper conduct, in the amount of $25,204,596, for royalty payments tendered by ACI to Churchill between September 2002 and July 2014; add new justifications for ACI's termination of the License Agreement; add an affirmative defense for unclean hands arising out of Nestor's rejection of ACI's offers to purchase the royalties in 2002; add an assertion that ACI's obligations under the License Agreement ended as early as June 24, 2009; and add the Rule against Perpetuities as an affirmative defense. (Filing No. 81-2; Filing No. 81-4).

After ACI filed its motion to amend, on December 23, 2015, counsel for ACI filed a Letter with the Court, stating:

> We respectfully submit that the Court need only decide the parties' competing summary judgment motions, a decision that likely will obviate the need to decide the discovery motions. Put simply, there is a straightforward basis for the Court to grant [ACI] judgment, now, on the existing summary judgment record. Undisputed facts applied to a clear written agreement demonstrate that ACI Worldwide is entitled to summary judgment. But if ACI Worldwide is right that the entry of summary judgment now is appropriate, then the Court need not decide all of those other motions, discovery will be concluded, and trial preparation ended.

(Filing No. 102 at pp. 1-2). Based on ACI's representations in its Letter, the Court entered an order on December 30, 2015, stating, "the Court will not address [ACI's] Motion to Amend Complaint (Filing 81) at this time." (Filing No. 107).

On March 9, 2016, Chief Judge Smith Camp entered a Memorandum and Order (Filing No. 109) and a Declaratory Judgment (Filing No. 110), granting ACI's Motion for Summary

Judgment as to claims (1) to (5), and dismissing all of Churchill's counter-claims. (Filing No. 109 at p. 18). The Declaratory Judgment did not explicitly rule on any of the other pending motions in the case.

Churchill appealed from the March 9, 2016, Declaratory Judgment. (Filing No. 111). On January 27, 2017, the Eighth Circuit issued an Opinion affirming the judgment, in part, and in part reversing and remanding for further proceedings. (Filing No. 115).

In reversing the judgment, the Eighth Circuit found that: Churchill "acquired the legal protections of either a third-party beneficiary or assignee in 2002," and the 2007 amendment did not eliminate those protections; ACI could not "impair Churchill's rights by amending the post-termination royalties provision without Churchill's consent;" the 2009 receivership sale of Nestor's assets to ATS "did not eliminate Churchill's assignment or its rights as a third-party beneficiary or assignee;" ACI's obligation to pay further royalties did not cease on July 21, 2014, when ACI acquired from ATS all of Nestor's remaining rights as licensor; and that "royalties are still due to Churchill for all sublicenses granted prior to the alleged termination date." (Filing No. 115 at pp. 9-14).

In affirming the judgment, the Eighth Circuit agreed with the district court that ACI validly terminated the Licensing Agreement on July 21, 2014, and concluded, "ACI does not owe Churchill royalties on any sublicenses that ACI has granted since July 21, 2014[,] or that it will grant in the future." Therefore, the Eighth Circuit "reverse[d] the entry of summary judgment in favor of ACI on the issue of amendment of the Licensing Agreement, affim[ed] the entry of summary judgment in favor of ACI on the issue of termination, and remand[ed] to the district court for further proceedings not inconsistent with this opinion." (Filing No. 115 at pp. 14-17).

After entry of the Mandate (Filing No. 117), the Court held a status conference with the parties regarding further progression of the case on remand. (Filing No. 119). ACI argues the Court can and should grant the instant motion to amend its pleadings, now that the case has been remanded. Because the parties agree that the Court's ruling on the motion to amend will determine the scope of any remaining discovery, the Court permitted supplemental briefing on the motion, which is now fully submitted to the Court. (Filing No. 120).

## ANALYSIS

Both ACI and Churchill dedicate a substantial portion of their supplemental briefing to the issues of whether Chief Judge Smith Camp implicitly denied ACI's motion to amend and whether

ACI's proposed amendments are inconsistent with the Eighth Circuit's opinion. (Filing Nos. 121-123). [1] Churchill additionally argues that ACI abandoned its motion when it filed its Letter on December 23, 2015, stating that "the Court need only decide the parties' competing summary judgment motions . . . [as] there is a straightforward basis for the Court to grant [ACI] judgment, now, on the existing summary judgment record."[2] However, because the Court finds ACI's motion for leave to amend was filed after the Court-imposed scheduling deadline, without good cause, the Court need not address the parties' remaining arguments.

When a party seeks leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure outside of the time period established by a scheduling order, the party must first demonstrate good cause under Rule 16(b). See *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). In this case, the Court entered an initial progression order setting January 16, 2015, as the deadline for the parties to file "[a]ny motion to amend pleadings." (Filing No. 16 at p. 3). ACI filed the present motion to amend on November 13, 2015, nearly ten months after the deadline. (Filing No. 81). Therefore, ACI must demonstrate good cause to amend its pleadings. See *Sherman*, 532 F.3d at 716.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). "[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern." *Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D. Mo. 1989). Although prejudice to the nonmovant resulting from modification of the scheduling order may be a relevant factor, the court will generally not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.

---

[1] Although the Court is not denying the motion on this basis, some of ACI's amendments are inconsistent with the law of the case. For example, ACI's proposed amended answer seeks to add a defense that "Churchill is neither a party to, nor a third party beneficiary of, the ACI License Agreement." (Filing No. 81-4 at p. 12). However, the Eighth Circuit concluded that Churchill "acquired the legal protections of either a third-party beneficiary or assignee in 2002," and the 2007 amendment did not eliminate those protections. (Filing No. 115 at p. 11).

[2] It is puzzling why ACI would urge the Court to rule on the competing summary judgment motions on the existing record, without first ruling on the pending motion to amend, if ACI believed it had a valid additional claim against Churchill for over $25 million and meritorious affirmative defenses to Churchill's counter-claims. Counsel for ACI represented, "[I]f ACI Worldwide is right that the entry of summary judgment now is appropriate, then the Court need not decide all of those other motions, discovery will be concluded, and trial preparation ended." (Filing No. 102 at pp. 1-2). Regardless of ACI's intentions, however, the Court's denial of the instant motion is not based on ACI's purported abandonment.

*Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). Whether to grant a motion for leave to amend is within the sound discretion of the district court. *Popoalii*, 512 F.3d at 497.

ACI's proposed amended complaint adds a new claim for money damages of over $25 million, representing royalty payments received by Churchill between September 2002 and July 2014. (Filing No. 81-2 at pp. 14-15). This new claim arises out of ACI's allegations that, in 2002, "Nestor Conflicted Fiduciaries" engaged in self-dealing when they rejected ACI's offer to purchase Nestor's interest in the royalties under the Licensing Agreement, and instead formed Churchill and assigned Nestor's interest in the royalties to Churchill. (Filing No. 81-2 at pp. 5-8). ACI alleges that, due to the "inequitable and outrageous conduct of the Nestor Conflicted Fiduciaries," Churchill acquired the royalties in 2002 instead of ACI, and thus Churchill was unjustly enriched by its receipt of royalty payments from ACI between September 2002 and July 2014. (Filing No. 81-2 at p.15). Similarly, ACI's proposed new defense of "unclean hands" arises out of ACI's allegations of impropriety surrounding the Nestor Conflicted Fiduciaries' actions in assigning the royalties to Churchill in 2002. (Filing No. 81-4 at pp. 4-9). ACI also seeks to add as an affirmative defense that Churchill's claims are barred by the Rule Against Perpetuities. (Filing No. 81-4 at p. 4).

ACI's proposed amendments are primarily predicated on alleged improper self-dealing by Nestor and Churchill surrounding the royalty assignment—*in 2002*. ACI filed its motion to amend nearly thirteen years after the alleged improper conduct occurred. The factual basis for ACI's proposed amendments has long been available to ACI, and ACI does not identify any reason why it could not have discovered these facts and moved to amend its pleadings earlier. Had ACI been diligent, "it would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline[.]" *Sherman*, 532 F.3d at 718. Moreover, at the time ACI filed its motion, written discovery had been closed for three months, both parties had already moved for summary judgment, and trial was set to commence in three months. (Filing No. 27). Permitting ACI to amend its pleadings would have resulted in additional discovery and delayed the proceedings. See *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend.").

The only change in circumstance identified by ACI was its retention of additional counsel on October 7, 2015, who identified new legal theories and defenses not previously raised by ACI's other legal counsel (who did not withdraw from the case). (Filing No. 92 at p. 3; Filing No. 122 at p. 11). However, "'[T]he fact that new counsel seeks to plead claims that prior counsel passed on does not establish good cause.'" *Rogers v. Medicredit, Inc.*, 2013 WL 4496278, at *3 (E.D. Mo. Aug. 21, 2013) (quoting *Field Day, LLC v. County of Suffolk*, 2013 WL 55697, *3 (E.D. N.Y. Jan. 3, 2013); see also, *Harshaw v. Bethany Christian Servs.*, 2010 WL 8032038, at *8 (W.D. Mich. Aug. 5, 2010) ("This court adheres to the widely followed principle that '[t]he arrival of new counsel . . . does not entitle parties to . . . set aside valid and binding orders of the court, regardless of the efficacy of any new strategy counsel seeks to follow.'").

Other than obtaining additional counsel, ACI offers no evidence or explanation why these allegations could not have been raised before the Court's deadline passed. Instead, ACI's briefing focuses on factors such as lack of prejudice to the Churchill and non-futility of its amendments. Under *Sherman*, however, the Court must first consider whether ACI exercised due diligence to comply with the scheduling order. ACI failed to meet this burden. Because ACI has not shown any change in law, newly discovered facts, or changed circumstances that prevented it from asserting the proposed amendments in accordance with the scheduling deadline, the Court finds ACI failed to demonstrate good cause and should be denied leave to amend. See *Cody Foster & Co. v. Urban Outfitters, Inc.*, 2015 WL 1981980, at *1 (D. Neb. May 4, 2015) ("Where there is 'no change in the law, no newly discovered facts, or any other changed circumstance,' the court will generally not find good cause to amend."). Accordingly,

**IT IS ORDERED:** Plaintiff's Motion to Amend Complaint and Answer to Defendant's Counterclaim (Filing No. 81) is denied.

DATED this 4th day of August.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge