# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ACI WORLDWIDE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CHURCHILL LANE ASSOCIATES, LLC, <br><br> Defendant. | 8:14CV249 <br><br> MEMORANDUM <br> AND ORDER |

This matter is before the Court on the Motion for Partial Summary Judgment, ECF No. 150, filed by Plaintiff ACI Worldwide Corp. (ACI), the Motion to Deny or Defer Ruling, ECF No. 159, on the Motion for Partial Summary Judgment, filed by Defendant Churchill Lane Associates, LLC (Churchill), and the Objection to Declarations of La Dell Diaz, Jerod L. Sands, and Minja Herian, ECF No. 175, filed by Churchill. For the reasons stated below, the Motion for Summary Judgment will be denied, in part with prejudice, and in part without prejudice to reassertion; the Motion to Deny or Defer Ruling will be granted; and the Objection will be overruled, without prejudice to reassertion.

## BACKGROUND

The following facts are those stated in the parties' briefs, supported by pinpoint citations to evidence in the record, and admitted, or not properly resisted, by the opposing party as required by NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

---

[1] See NECivR 56.1(b)(1) (effective December 1, 2015):

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any

The Court has also drawn facts from its prior summary judgment order, ECF No. 109, and the Eighth Circuit Court of Appeals' opinion, ECF No. 115.

**I. Factual Background**

In February 2001, Nestor, Inc., (Nestor) entered into an agreement (Licensing Agreement) for ACI to use, modify, enhance, market, sublicense, maintain, and support, certain credit card fraud detection software (Licensed Software Technology),[2] developed by Nestor. Under the Licensing Agreement, Nestor would own any new technology (New Technology) ACI developed using the Licensed Software Technology. ACI agreed to pay royalties on any fees paid by its customers for use of the New Technology.

Section 2.1 of the Licensing Agreement stated:

> Nestor hereby grants to ACI a world-wide, perpetual (except as provided in article 9.0), non-revocable (except as provided in article 9.0), non-transferable, non-exclusive license (the "License") to copy, use, modify, enhance, market, sub-license (directly or through its customary and usual distribution channels for its other products), maintain and support the Software Products, all subject to the terms and conditions of this Agreement and the Attachments.

ECF No. 52, Page ID 398.

Section 2.4 of the Licensing Agreement stated:

> ACI shall be limited to distributing (sub-licensing) the Software Programs in object-code format. Except pursuant to the escrow terms in the customer's Software Agreement (which terms for the Software Programs shall be no different from ACI's standard escrow terms for its other software which it licenses to customers), ACI shall be prohibited from (i) sub-licensing or otherwise distributing, transferring or disclosing

---

disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

[2] For consistency, the Court employs the terminology used by the Eighth Circuit Court of Appeals. *See* ECF No. 115.

> the Software Programs source code or its proprietary design to any third-party and (ii) licensing the Software Programs to any third-party for use as a development platform. ACI shall prohibit all Software Program licensees from translating, reverse engineering, decompiling or disassembling the Software Program object code or otherwise attempting to derive its source code or its proprietary design therefrom. ACI [unreadable] distributors shall sub-license the Software Products under the terms of the license agreement set forth on Attachment C. ACI may modify or replace the license agreement at any time, in whole or in part, provided no modification or replacement will diminish protection of Nestor's confidentiality or intellectual property rights or increase Nestor's potential liability. ACI will effectively enforce against all customers that obtained the Software Products from ACI the provisions of the Software Agreement that affect Nestor's confidentiality or intellectual property rights in the Products.

ECF No. 52, Page ID 398–99.

Section 9.3 of the Licensing Agreement stated:

> Upon the termination of this Agreement by either party, ACI shall (a) cease all marketing and sublicensing activities under the Agreement, (b) within (10) calendar days pay all amounts due and amounts due and outstanding hereunder and (c) deliver to Nestor or its designee all copies of the Software Products within ACI's possession, custody or control (together with a certificate of an officer of ACI certifying such delivery); provided ACI may retain sufficient copies of the Software Products to be able to support, maintain and enhance the Software Products that have been sublicensed to customer prior to the termination until such time as such sublicenses shall expire or terminate.
>
> Notwithstanding any termination of this Agreement, the License and any sublicenses shall continue in effect with respect to any sublicense granted to ACI prior to termination and ACI shall remain liable to Nestor for royalties accruing with respect thereto. Termination of this Agreement and the License shall not release ACI from any of its obligations, or liabilities accrued, or licensed under this Agreement, or rescind or give rise to any right to rescind any payment made or other consideration given hereunder.

*Id.*, Page ID 402.

In 2002, Nestor and ACI executed Amendment 2 to the Licensing Agreement, by which ACI consented to an assignment by Nestor "to a third party of Royalties due Nestor under the [Licensing] Agreement." ECF No. 52, Page ID 417. Nestor eventually

3

entered into an agreement (Assignment of Royalty Stream) with Churchill, by which Nestor assigned to Churchill Nestor's right to future royalties under the Licensing Agreement.

In 2008, Nestor and ACI executed Amendment 5 to the Licensing Agreement, by which Nestor assigned and transferred all rights in the New Technology to ACI. Amendment 5 also stated that Nestor had "irrevocably assigned all monies due and to become due under the [Licensing] Agreement" to Churchill, *id.*, Page ID 426, and that ACI would continue to pay royalties to Churchill on fees it collected for customers' use of the New Technology, *id.* Page ID 425–26.

In 2009, Nestor became insolvent and entered receivership. The court-appointed receiver sold Nestor's rights in the Licensing Agreement and the Licensed Software Technology to American Traffic Solutions (ATS). On July 20, 2014, ACI purchased those same rights from ATS. The next day, ACI executed a document terminating the Licensing Agreement. ECF No. 52, Page ID 428–29. The document stated "Licensor and Licensee hereby terminate the Licensing Agreement as of the Effective Date and agree that all provisions of the Licensing Agreement that were designated to survive termination are likewise terminated as of the Effective Date." ECF No. 52, Page ID 428. Several weeks later, ACI sent Churchill a letter stating that ACI had terminated the Licensing Agreement, and with it, ACI's obligation to pay royalties on the Licensed Software Technology and New Technology. With the letter, ACI also included a check, which represented the full balance of royalties due Churchill. Churchill disputed that ACI was no longer obligated to pay royalties.

4

## II. Procedural Background

On October 20, 2014, ACI filed this action, seeking a declaratory judgment that, among other things, ACI validly amended the Licensing Agreement to remove any post-termination obligation to Churchill; ACI validly terminated the Licensing Agreement; and ACI rendered full and final payment to Churchill on all remaining royalties.

This Court granted summary judgment in favor of ACI on March 9, 2016, finding that ACI validly amended and terminated the Licensing Agreement and therefore was not liable to Churchill for any additional royalties after the Licensing Agreement's termination. Churchill appealed, and on January 27, 2017, the Eighth Circuit Court of Appeals issued an opinion affirming the Court's order, in part; reversing it, in part; and remanding for further proceedings. The Eighth Circuit held that although ACI validly terminated the Licensing Agreement, ACI's amendment of the agreement to eliminate § 9.3's post-termination royalty obligation was invalid because it violated Churchill's rights as an assignee to the Licensing Agreement without Churchill's consent. Therefore, ACI remained obligated to pay royalties to Churchill on any sublicenses granted before the termination of the Licensing Agreement on July 21, 2014, but ACI did "not owe Churchill royalties on any sublicenses that ACI has granted since July 21, 2014 or that it will grant in the future." ECF No. 115, Page ID 1738.

ACI filed the present Motion for Partial Summary Judgment, ECF No. 150, on October 19, 2017, asking this Court to find that:

> (1) when ACI validly terminated the License Agreement on July 21, 2014, the rights granted to and the obligations assumed by both ACI and the ACI Affiliates likewise terminated; (2) ACI does not owe Churchill any Royalties for any licenses granted since July 21, 2014, regardless of whether the license was between ACI and an ACI Affiliate or ACI and a customer; (3) ACI and its customers could terminate the sublicenses that

5

were in place before July 21, 2014 and enter into new licenses after July 21, 2014 that are free of the Royalties obligation; (4) ACI and ACI Affiliates could execute the Mutual Terminations effective July 21, 2014; (5) the termination of the License Agreement did not impair Churchill's rights, and likewise the termination of sublicenses between ACI and ACI Affiliates and ACI and its customers, cannot impair Churchill's rights; and (6) when ACI's customers purchased Annual Product Support that expired or terminated sometime post-July 21, 2014, the obligation to pay Royalties to Churchill on such Annual Product Support expired or terminated as well.

*Id.*, Page ID 2211–12.

In its Statement of Material Facts, ECF No. 151, Page ID 2218–23 (Statement), ACI cited primarily to the Eighth Circuit Opinion[3] and the Licensing Agreement,[4] as well as a limited number of other documents[5] already in the record.

Churchill has moved under Rule 56(d) for the Court to deny or defer ruling on the summary judgment motion until further discovery is conducted. Churchill has a pending motion to compel discovery, ECF No. 135, before Magistrate Judge Michael D. Nelson, seeking, among other things, evidence of terminations of sublicense agreements between ACI and its customers, and ACI affiliates and their customers, as well as evidence regarding ACI's current contractual relationships with its customers and affiliates.

---

[3] Cited at Statement ¶¶ 1, 26, 27.
[4] Cited at Statement ¶¶ 2–10, 13, 15, 18–20, 27.
[5] These documents consisted of a declaration of attorney Minja Herian, ECF No. 148-1, cited at Statement ¶¶ 10–11; deposition excerpts of Alan Wiener, ECF Nos. 52 & 53, cited at ¶¶ 12, 14, & 17; the Assignment of Royalty Stream, ECF No. 52, cited at Statement ¶¶ 14 & 16; the Asset Purchase Agreement between Nestor and ATS, ECF No. 53, cited at Statement ¶¶ 21 & 22; Answers to certain interrogatories, ECF No. 53, cited at Statement ¶¶ 21 & 22; the Asset Purchase Agreement between ATS and ACI, ECF No. 52, ex. 1, cited at Statement ¶ 23; the Termination of the Licensing Agreement, ECF No. 52, ex. 1C, cited at Statement ¶ 24; the Mutual Termination between ACI and ACI Worldwide (Asia) Pte Ltd, ECF No. 138-11, cited at Statement ¶ 26; and a declaration by Kimberly Haluska, ECF No. 61-2, Page ID 783–84, cited at Statement ¶ 28.

**STANDARD OF REVIEW**

**I. Summary Judgment**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

**II. Motion to Deny or Defer Ruling on Summary Judgment**

"The general rule is that summary judgment is appropriate 'only after the nonmovant has had adequate time for discovery.'" *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (quoting *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 893 (8th Cir. 2014)). "Pursuant to Rule 56(d), a party opposing summary judgment

may move for a continuance 'until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition' to a summary-judgment motion." *Id.* (quoting *Toben*, 751 F.3d at 893).

The party seeking additional discovery must establish "(1) that [he] ha[s] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Toben*, 751 F.3d at 895). "As to the second element, '[i]t is well settled that Rule 56([d]) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct].'" *Id.* (alteration in original) (quoting *Toben*, 751 F.3d at 895).

## DISCUSSION

ACI argues that, once the Licensing Agreement was terminated, any new licenses issued to customers by ACI or its affiliates were free of the Licensing Agreement's royalty obligation, even if the new license was issued to a customer with whom ACI had a sublicensing agreement prior to July 21, 2014.

Churchill argues that, under § 9.3, the sublicenses survived termination of the Licensing Agreement as well as the termination of any agreements governing the sublicenses between ACI and its customers or an ACI affiliate and its customers. In other words, Churchill asserts that the royalty obligation is conditioned on the customer's *use* of the licensed technology, not the continued operation of the agreement governing the sublicense to use the technology. According to Churchill, "the 'sublicenses' are the right of the customers to use the New Technology," while "[t]he

'Software Agreements'[6] set the financial and other terms relating to the 'sublicense.'" ECF No. 157, Page ID 2315. In Churchill's view, even if a sublicense agreement is terminated, the royalty obligation continues as long as the customer uses the licensed technology—even if the customer ceases using the technology for any length of time and resumes using it upon entering a new licensing agreement with ACI.

ACI asserts that a "royalty stream" "outliv[ing] the agreement that supports it" defies common sense. ECF No. 168, Page ID 2394. However, ACI has not presented any authority for the proposition that such is true as a matter of law, sufficient to override the parties' contract.[7] Thus, the Court must examine the status of the sublicense agreements and their relationship to the Licensing Agreement.

First, neither ACI nor Churchill disputes that royalties are owed Churchill on any fees ACI has collected pursuant to any sublicense agreements with ACI's customers that have continued uninterrupted—without cancellation or renewal[8]—since before July 21, 2014. *See* Reply Brief, ECF No. 168, Page ID 2392 ("ACI knows that sublicense agreements granted before July 21, 2014 and that remain in effect are not free of the Royalties obligation set forth in § 9.3."). However, ACI claims it is free of the royalty obligation with respect to sublicenses it cancelled in favor of new agreements with the

---

[6] Churchill notes that §§ 2.4 and 3.3 of the Licensing Agreement use the term "Software Agreements" to refer to those agreements governing sublicenses with customers. *See* ECF No. 52, Page ID 398–99.

[7] ACI cites to *Sybron Transition Corp. v. Nixon, Hargrave, Devans & Doyle*, 770 F. Supp. 803, 813 (W.D.N.Y.,1991), for the proposition that, absent the right to use intellectual property, "a license agreement necessarily fail[s] for lack of consideration and impossibility of performance." ECF No. 168, Page ID 2411. The Court finds *Sybron* inapplicable because, here, there is no risk of an agreement failing for lack of consideration. Section 9.3 merely states that any sublicenses may continue beyond the termination of the Licensing Agreement, provided that ACI pays royalties on any fees collected for use of the New Technology.

[8] ACI disputes that any agreements it entered into with existing customers after July 21, 2014, constituted "renewals" of prior agreements. The Court uses the term merely to distinguish between agreements that expired automatically at the end of a set time from agreements that were affirmatively terminated before expiration.

same customers or that expired and were renewed. Therefore, the Court must look to any purported cancellations or renewals of sublicense agreements, and the evidence supporting them, in order to determine whether ACI owes royalties on particular sublicenses.

**I. The ACI Affiliates' Mutual Termination**

As stated, ACI asks this Court, *inter alia*, to find as a matter of law that (1) "ACI does not owe Churchill any Royalties for any licenses granted since July 21, 2014, regardless of whether the license was between ACI and an ACI Affiliate or ACI and a customer;" (2) "ACI and ACI Affiliates could execute the Mutual Terminations effective July 21, 2014;" and (3) "the termination of the License Agreement did not impair Churchill's rights, and likewise the termination of sublicenses between ACI and ACI Affiliates and ACI and its customers, cannot impair Churchill's rights." ECF No. 150, Page ID 2211–12. These questions turn, at least in part, on the effect of any purported terminations of agreements between ACI and its affiliates (Mutual Terminations) regarding the affiliates' right to sublicense—or, as ACI terms it, "sub-sublicense"—the New Technology.

Section 2.1 of the Licensing Agreement stated that "Nestor hereby grants to ACI a world-wide, perpetual . . . license (the "License") to copy, use, modify, enhance, market, sub-license (directly or through its customary and usual distribution channels for its other products), maintain and support the Software Products," and that "[a]ny ACI Affiliate[9] may exercise any of ACI's rights hereunder." ECF No. 52, Page ID 398.

---

[9] Section 1.1 of the Licensing Agreement defined "Affiliate" as:

 [A]ny corporation that (a) directly or indirectly controls, is controlled by, or is under common control with the party. ACI shall promptly notify Nestor of any Affiliate to which

11

Churchill argues that any use of the New Technology by ACI Affiliates' customers is still subject to the royalty obligation, regardless of Mutual Terminations between ACI and its affiliates, and that ACI's backdating of the Mutual Terminations—to the extent any backdating occurred—impairs Churchill's rights to any fees that accrued between July 21, 2014, and the date—known only to ACI and its affiliates—the Mutual Terminations were executed.

The only Mutual Termination cited by ACI is one between ACI and an ACI affiliate—"ACI Worldwide (Asia) Pte Ltd a Singapore Company" (ACI Asia)—purportedly dated July 21, 2014. *See* ECF No. 138-11, Page ID 1980–82. ACI argues that this document did not effect a termination of the sublicense, but rather, "document[ed]" or "memorialized" the termination that occurred by virtue of the termination of the Licensing Agreement on that date, and that ACI is only liable for royalties prior to July 21, 2014. The Court will address ACI's argument before discussing the lack of evidence of other Mutual Terminations.

**A. Effect of Mutual Termination between ACI and ACI (pte) Asia**

To the extent ACI entered into contracts with affiliates for the affiliates to sublicense the New Technology,[10] ACI and some or all of its affiliates executed

---

>ACI gives a copy of the source code for the Software Programs. The current list is set forth on Attachment F. Control means the ownership of more than 50% of the voting securities of an entity. A party and any and all of its Affiliates exercising any rights under this Agreement shall be jointly, severally responsible and liable for any and all of the duties, obligations and liabilities under this Agreement of such party or Affiliates.

ECF No. 52, Page ID 398.

[10] ACI states in its Statement of Material Facts that it entered into agreements with its affiliates to sublicense the "New Technology." Supp. Brief ¶ 12, ECF No. 151, Page ID 2220. However, as with several of the parties' asserted facts, the cited evidence does not support the assertion. ACI cites to a deposition in which the deponent states that ACI developed and sublicensed the New Technology to customers pursuant to the Licensing Agreement. *See* Wiener Dep. 170:11–171:20, ECF No. 53, Page ID 542–43. There is no mention of affiliates.

terminations of some or all of these contracts at some point in time. However, more specific evidence of these terminations, save one, is not before the Court.

Paragraph 26 of ACI's Statement of Material Facts states that ACI "documented that approved termination of all sublicense agreements by way of mutual termination agreements between ACI and its Affiliates, using the same date affirmed by the Eighth Circuit as the proper termination date." ECF No. 151, Page ID 2222–23 (citing ECF Nos. 115 & 138-11). ACI cites to the Eighth Circuit opinion, which does not mention ACI affiliates, *see* ECF No. 115, and the Mutual Termination between ACI and ACI Asia, ECF No. 138-11. Because ACI has only cited to this document as evidence of a termination between ACI and an affiliate, the Court will consider its effect only as between these two entities.

ACI argues that "when the [Licensing] Agreement was terminated on July 21, 2014, the rights granted to and the obligations assumed by both ACI and the ACI Affiliates likewise terminated," ECF No. 151, Page ID 2225, and that these rights included "ACI's rights to sublicense to customers and to ACI Affiliates, and ACI Affiliates' rights to sub-sublicense," *id.*, Page ID 2224. "After that date, only ACI, the owner of the [Licensed Software Technology and New Technology], could grant ACI Affiliates the right to sublicense the Technology . . . ." *Id.*, Page ID 2225. Thus, according to ACI, the Mutual Termination was made "effective as of the date that the Eighth Circuit held that the [Licensing] Agreement (together with the rights and obligations of ACI and its Affiliates) terminated. This is the one and only date the termination could be, according to the Eighth Circuit." *Id.*, Page ID 2226.[11]

---

[11] ACI's argument also begs the question: If the Mutual Termination was merely a memorialization or documentation of the termination of the sublicenses effected by the termination of the

13

ACI is incorrect that its termination of the Licensing Agreement affected the sublicenses between ACI affiliates and their customers. The Eighth Circuit stated that, under § 9.3, ACI remained liable to pay royalties to Churchill on sublicenses granted before July 21, 2014. Section 2.1 of the Licensing Agreement granted ACI affiliates the same rights as ACI. *See* ECF No. 52, Page ID 398. Therefore, sublicenses granted by ACI affiliates and sublicenses granted by ACI are treated the same by the Licensing Agreement, and the sublicenses survived termination of the Licensing Agreement by virtue of § 9.3. ECF No. 52, Page ID 402 ("Notwithstanding any termination of this Agreement, the License and any sublicenses shall continue in effect with respect to any sublicense granted to ACI prior to termination and ACI shall remain liable to Nestor for royalties accruing with respect thereto."). For this reason, the portion of ACI's summary judgment motion that asks this Court to find that "when ACI validly terminated the [Licensing] Agreement on July 21, 2014, the rights granted to and the obligations assumed by both ACI and the ACI Affiliates likewise terminated" will be denied.

Although ACI and Churchill dispute whether the Licensing Agreement authorized ACI to terminate the agreement with ACI Asia, two parties are free to terminate an

---

Licensing Agreement, then what purpose did the Mutual Termination serve? According to ACI, it chose "to memorialize the termination, so that contractual provisions would reflect the new reality established by ACI's valid termination of the [Licensing] Agreement and ACI's ownership of the Nestor Technology." *Id.*, Page ID 2226. Clearly, if ACI was correct, and the Mutual Termination carried no legal effect, then there would be nothing for the Court to rule on regarding whether or not ACI could execute a meaningless document. *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'") (alteration in original) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (U.S. 1975))). The Court need not dwell on this argument, however, because the terms of the Mutual Termination show that it unambiguously terminated the agreement between ACI and ACI Asia. Mutual Termination ¶ 1, ECF No. 138-11, Page ID 1981 ("Company and Distributor hereby mutually terminate the Distribution Agreement . . . ."); *see Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 375 (S.D.N.Y. 2006) (holding that when contractual language is unambiguous, "courts may not consider extrinsic evidence of the parties' intent, instead determining the meaning of the contract 'from the terms expressed in the instrument itself.'" (quoting *Metro. Life Ins. v. RJR Nabiso, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990))).

agreement upon mutual assent, and neither Churchill nor ACI has argued that the Licensing Agreement required ACI to continue its agreements with customers and affiliates *ad infinitum*.[12]  Rather, § 9.3 stated that the termination of the Licensing Agreement would not affect the sublicenses between ACI and its customers.

However, hand-in-hand with the termination of the agreement between ACI and ACI Asia is the issue of possible retroactivity and its effect on Churchill's rights. Churchill argues that ACI and ACI Asia executed the Mutual Termination after July 21, 2014, but stated that the effective date was July 21, 2014.  As stated, ACI's termination of the Licensing Agreement did not automatically terminate the agreement between ACI and ACI Asia, at least with regard to sublicenses granted by ACI Asia.  Thus, the date when the Mutual Termination was actually executed is relevant to the Motion for Summary Judgment.

ACI argues that even if the Licensing Agreement's termination did not, in and of itself, terminate the agreement between ACI and ACI Asia, ACI was still free to date the Mutual Termination retroactively to July 21, 2014.  According to ACI, such retroactive dating could not impair the rights of Churchill.  However, not only has ACI not disclosed the date of the Mutual Termination's drafting or execution, it has not acknowledged whether any retroactive dating of the agreement occurred at all.  The Court will deny these portions of the Motion for Summary Judgment, pending further discovery.

**B. Summary of Other Mutual Terminations**

In addition to the Mutual Termination between ACI and ACI Asia, ACI filed a "Summary of License and Maintenance Fees," ECF No. 169-3 (Summary), offered

---

[12] For this reason, the Court does not reach the parties' argument regarding the interpretation of § 2.4 of the Licensing Agreement.

through the affidavit of Minja Herian, *id.*,[13] as evidence that it has terminated agreements with other affiliates for sublicenses. This summary has columns to indicate who, as of July 21, 2014, was the "Licensor and IP Owner," the "Licensee," the "Sublicensee," and any "Customer(s) of the Sublicensee." *See id.*, Page ID 2426. The Summary also lists the "Sublicense Status" as either "Active" or "Terminated" and the amounts totaling 15% of the "License Fees Invoiced" and "Maintenance Fees Invoiced."

While the Summary identifies several sublicenses as "Terminated," there is no information regarding the date on which, or the mechanism whereby, these sublicenses were terminated. As with the purported termination of the ACI Asia agreement, the Court cannot rule on any alleged retroactive dating of the listed agreements, or the effects on Churchill's rights. The Court will grant Churchill's 56(d) motion and deny ACI's motion for summary judgment pending further discovery regarding the sublicenses granted by ACI affiliates before termination of the Licensing Agreement, and the status of ACI's, or its affiliates', current contractual relationship with those customers.

## II. Individual Terminations by ACI and its Customers

As discussed, ACI asks this Court to find that "ACI does not owe Churchill any Royalties for any licenses granted since July 21, 2014, regardless of whether the license was between ACI and an ACI Affiliate or ACI and a customer;" and also to find

---

[13] Churchill objects, *inter alia*, to the Summary because Herian's affidavit is not based solely on her personal knowledge. The affidavit states that Herian "make[s] all statements herein with personal knowledge, the knowledge of [Herian's] legal team and information supplied by ACI Worldwide representatives." *Id.*, Page ID 2424. NECivR 7.1(a)(2)(C) states "[a]n affidavit must identify and authenticate any documents offered as evidence. The affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, [and] show affirmatively that the affiant is competent to testify to the matters stated . . . ." While the Court is unpersuaded by ACI's argument that personal knowledge is not required, the Court finds that the information in the Summary is insufficient regardless of its propriety under NECivR 7.1. The Court will overrule the objection without prejudice to reassertion if ACI should attempt to rely on it in the future.

that "ACI and its customers could terminate the sublicenses that were in place before July 21, 2014, and enter into new licenses after July 21, 2014, that are free of the Royalties obligation;" and that "the termination of the [Licensing] Agreement did not impair Churchill's rights, and likewise the termination of sublicenses between ACI and ACI Affiliates and ACI and its customers, cannot impair Churchill's rights." ECF No. 150, Page ID 2211–12. As with the Mutual Terminations, the Court must look to evidence of any terminations of sublicenses between ACI and its customers (Customer Terminations) to answer these questions.

ACI argues that it was free to terminate its sublicenses with customers after July 21, 2014, and enter into license agreements free of the royalty obligation. ACI's briefing implies, but does not explicitly state, that ACI has terminated sublicense agreements with some of its customers. *See* ECF No. 151, Page ID 2228 ("With respect to sublicenses granted before July 21, 2014, by ACI to its customers, as those sublicenses terminated or expired after July 21, 2014, to the extent the customer wanted to continue to use the software products, ACI granted new licenses."); ECF No. 168, Page ID 2392 ("Certain, but not all licenses and sublicenses that ACI granted on or before July 21, 2014, have been terminated or expired, and new licenses or sublicenses granted."); *id.*, Page ID 2399 ("[A]ny rights Churchill had to Royalties were cut off as soon as ACI and its customers terminated their licenses by mutual agreement."); *id.*, Page ID 2400 ("ACI and its customers would have been within their rights to terminate their sublicense agreement even before Nestor's bankruptcy.").

None of the statements concerning potential terminations is accompanied by citations to evidence in the record that would indicate such terminations occurred. *See*

17

*Hotel 71 Mezz Lender LLC v. National Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015) ("Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim."). Without evidence that such terminations occurred, and under what terms, the Court cannot evaluate ACI's contention that it does not owe Churchill any further Royalties on fees paid directly from its customers on sublicenses issued before July 21, 2014. The same is true of sublicenses that expired at the end of a period set by the sublicense agreement and were renewed by ACI and the customer. Summary Judgment will be denied without prejudice to reassertion, pending further discovery regarding any terminations or renewals of sublicenses that were in effect as of July 21, 2014, and ACI's current contractual relationship with customers with whom ACI had sublicense agreements as of July 21, 2014.

### III. Annual Product Support

Last is the issue of Annual Product Support. ACI asks the Court to rule that "when ACI's customers purchased Annual Product Support that expired or terminated sometime post-July 21, 2014, the obligation to pay Royalties to Churchill on such Annual Product Support expired or terminated as well." ECF No. 15, Page ID 2211–12.

In addition to fees for the use of the New Technology, ACI agreed to pay royalties on "maintenance fees," referred to in the sublicense agreements as "product support fees," paid by customers using the New Technology. ACI states that "the customer agrees to purchase product support commensurate with the first year of the

license agreement, and may thereafter discontinue such support, or may agree to purchase such support for as many new one-year terms while the license is in effect." Supp. Brief ¶ 11, ECF No. 151, Page ID 2220.

ACI cites evidence regarding the Product Support Fees, including (1) a declaration by Minja Herian, ECF No. 148-1, referring to an agreement between ACI and one customer, ECF No.148-4 (Product Support Agreement), and (2) a summary of product support fee terms contained in other agreements between ACI and certain customers. ACI states in its reply brief that "[t]here is no obligation to purchase Annual Product Support beyond one year, nor does the customer have the right up front to purchase Annual Product Support beyond the one-year term" and that ACI "uses the same or substantially similar language in each Annual Product Support provision." ECF No. 168, Page ID 2402. ACI cites, respectively, to the declaration of Jerod Sands, ECF No. 169-2, and another declaration by Ms. Herian, ECF No. 169-3, which itself cites generally to an attachment to an agreement between ACI and a customer, ECF 169-3, Page ID 2452–58.

Essentially, ACI seeks summary judgment citing not to the relevant evidence itself, but to its own its representation of what the evidence contains, or to a portion of evidence with assurances that what remains undisclosed is substantially similar. The Court has no reason to doubt these representations, but, as with the Mutual Terminations and Customer Terminations, Churchill is entitled to the opportunity to review the evidence itself in resisting summary judgment to see if any genuine issue of material fact remains. Because the evidence has not yet been produced, the Court will

19

deny the remainder of the motion for summary judgment without prejudice to reassertion, pending further discovery.

## CONCLUSION

For the reasons stated above, ACI's Motion for Summary Judgment will be denied, in part with prejudice, and in part without prejudice to reassertion pending further discovery; Churchill's Motion under Rule 56(d) will be granted; and Churchill's objection will be overruled without prejudice to reassertion. Accordingly,

IT IS ORDERED:

1. The Motion for Partial Summary Judgment, ECF No. 150, filed by Plaintiff ACI Worldwide Corp., is denied, as follows:

    a. The portion of the motion that asks the Court to find that "when ACI validly terminated the License Agreement on July 21, 2014, the rights granted to and the obligations assumed by both ACI and the ACI Affiliates likewise terminated" is denied with prejudice;

    b. The motion is otherwise denied without prejudice to reassertion;

2. The Motion to Deny or Defer Ruling, ECF No. 159, on the Motion for Partial Summary Judgment, filed by Defendant Churchill Lane Associates, LLC, is granted; and

3. The Objection to Declarations of La Dell Diaz, Jerod L. Sands, and Minja Herian, ECF No. 175, filed by Defendant Churchill Lane Associates, LLC, is overruled without prejudice to reassertion.

Dated this 7th day of February, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge