# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ACI WORLDWIDE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CHURCHILL LANE ASSOCIATES, LLC, <br><br> Defendant. | 8:14CV249 <br><br> ORDER |

This matter is before the Court on following a telephone status conference requested by Defendant Churchill Lane Associates ("Churchill"), held on March 19, 2018. The Court and counsel for both parties discussed the parties' Joint Status Report (Filing No. 184) and Churchill's Motion to Compel Post-Termination Royalty Discovery (Filing No. 135).

## BACKGROUND

Churchill filed its motion to compel on September 22, 2017, requesting that the Court order ACI Worldwide Corp. ("ACI") to full answer Interrogatory Nos. 14 and 15, and to provide documents responsive to Churchill's Requests for Production of Documents Nos. 82-86, 89-90, and 94-95. Broadly speaking, Churchill's requests seek documents and communications related to the terminations of sublicense agreements between ACI and its affiliates and their customers, and documents and information Churchill believes is necessary to calculate post-termination royalty fees.

Before Churchill's motion to compel was ripe, on October 19, 2017, ACI filed a Partial Motion for Summary Judgment (Filing No. 150). Chief Judge Smith Camp declined ACI's request to issue a unified ruling on ACI's summary judgment motion and Churchill's motion to compel; however, the Court determined that Chief Judge Smith Camp would rule on the summary judgment motion before the undersigned ruled on the motion to compel. (Filing No. 176). Chief Judge Smith Camp issued a Memorandum and Order on February 7, 2018, denying ACI's partial motion for summary judgment, and granting Churchill's motion to defer ruling on summary judgment pending further discovery. (Filing No. 182).

Following Chief Judge Smith Camp's ruling, the Court ordered the parties to meet and confer to attempt to resolve issues raised in the motion to compel. On February 23, 2018, the

parties filed a Joint Status Report (Filing No. 184) wherein they agreed that by March 9, 2018, ACI would provide Churchill with information and documents responsive to Interrogatory Nos. 14 and 15, and Request for Production Nos. 82 (to the extent it requests master agreements), 83, and 85 (excluding emails related to invoices). ACI also agreed to produce documents in accordance with the Rule 26(f) Report, including production of electronic documents as searchable TIFF images with load files that indicate the beginning and end of each document and include all relevant metadata. ACI stood on its remaining objections. (Filing No. 184).

Churchill requested a status conference with the Court after ACI indicated that its supplemental production would not be produced as previously agreed, due to the appearance of new lead counsel for ACI. The Court held the status conference to address Churchill's concerns and the pending motion to compel.

## DISCUSSION

### Interrogatory Nos. 14 and 15

Churchill's motion requests that ACI be compelled to fully answer Interrogatory Nos. 14 and 15, which ask ACI to identify, "for each customer with a sublicense for the New Technology that was granted before and still in effect as of July 21, 2014, the date (if any) the customer stopped licensing the New Technology and all agreements with the customer related to the New Technology executed since June 30, 2014." (Filing No. 135; Filing No. 138-4). During the telephone conference, counsel for ACI represented that it would provide its answers to these requested interrogatories by way of their supplemental production of documents. See Fed. R. Civ. P. 33(d)(permitting an answer to interrogatory to be made by production of business records). Accordingly, Churchill's motion is denied as to these interrogatories, subject to reassertion if ACI's production does not provide full answers.

### Request for Production No. 82

Churchill's Request for Production No. 82 requests "Complete copies, including all attachments and exhibits, of all contracts for the license, use and/or maintenance of the New Technology for all ACI customers that were using the New Technology as of June 30, 2014 (in English)." (Filing No. 138-5 at p. 2). Churchill represented that it was not in possession of these agreements, and following discussion with counsel, ACI agreed to produce relevant master

agreements with attachments responsive to this request, by March 30, 2018. Therefore, Churchill's motion is denied as to Request No. 82, subject to reassertion after review of ACI's supplemental production.

**Request for Production No. 83**

Churchill's Request for Production No. 83 seeks copies of "all contract renewals, extensions, amendments, appendices, exhibits, and changes of any kind, including agreements for capacity increases cancellations, or replacement agreements related to all contracts for the license, use and/ or maintenance of the New Technology for all ACI's customers that were using the New Technology as of June 30, 2014." ACI agreed to produce documents responsive to this request by April 13, 2018, although there is an ongoing dispute about whether ACI should be required to produce all metadata associated with the documents to be produced.

Churchill maintains that ACI should be required to produce these documents with all metadata intact, as they agreed in their Rule 26(f) Report.[1] (Filing No. 137 at pp. 27-28). Churchill primarily requests metadata with respect to when mutual terminations were created and executed. (Filing No. 153 at p. 29). During the telephone conference, Churchill also argued metadata is relevant to show the identity of the individual(s) that prepared the mutual terminations and whether there were earlier drafts or edits. Moreover, Chief Judge Smith Camp has indicated that the dates the mutual terminations were drafted and executed are relevant issues in this case. (Filing No. 182 at p. 15).

Production of electronically stored information ("ESI") is subject to the same proportionality considerations set forth in Fed. R. Civ. P. 26(b)(1). "Parties should not demand forms of production, including native files and metadata fields, for which they have no practical use or that do not materially aid in the discovery process." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 173 (2018). At this time, the undersigned is not convinced that Churchill has demonstrated a need for *all* metadata associated with the documents responsive to

---

[1] "The parties agree that documents maintained in electronic form in a party's ordinary course of business will be produced in electronic form. Where reasonably feasible, such documents shall be produced as searchable TIFF images with load files (that indicate the beginning and ending of each documents, preserve the parent-child relationship, and include all relevant metadata) to allow the images to be loaded into a document production database." (Filing No. 15).

Request No. 83, or that the parties' Rule 26(f) Report requires such production (the report agreed that "relevant" metadata be produced "Where reasonably feasible."). ACI admits that the mutual terminations were executed after the Eighth Circuit opinion was issued in this case (purporting to be effective retroactively), and agreed to stipulate or otherwise provide Churchill with what dates the agreements were signed. Accordingly, the Court will not compel ACI to produce all metadata associated with the documents responsive to Request for Production No. 83. However, if ACI's supplemental production does not include evidence regarding when the mutual terminations were drafted and executed, the Court may be called upon to revisit the issue.

### Request for Production No. 84

Churchill's Request for Production No. 84 asks for "All documents and emails relating to all communications related to all contract term renewals, extensions, and/or replacement agreements that ACI has entered into with ACI's customers relating to the license, use and/or maintenance of the New Technology since June 30, 2014." ([Filing No. 138-5 at p. 4](#)).

ACI objects to production of communications as parol evidence because the written contract renewals/extensions/replacement agreements will speak for themselves, regardless of prior email communications about the parties' separate understandings of the contracts. ACI also objects to production of communications as unduly burdensome. ACI explained that Churchill's request would include thousands of emails, as one contract renewal could entail over a year of discussion regarding the terms.

Churchill argues that prior email communications would be relevant if the written contracts were ambiguous. Churchill further argues that ACI did not offer evidence to show production of communications would be an undue burden. Churchill objects to a phased discovery approach, wherein ACI will produce the written agreements before the parties or Court determines whether email communications are, in fact, relevant.

Although Churchill's objections are well-taken, the undersigned finds that a phased approach best addresses the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1). At this stage, the importance and likely benefit of the evidence of prior communications is outweighed by the burden to ACI to search for and produce thousands of documents and emails that may ultimately prove irrelevant if the written contracts are not ambiguous. However, the parties may

revisit this issue after ACI produces the written agreements, and may request further assistance from the Court after ACI supplements its production.

**Request for Production No. 85**

Churchill's Request for Production No. 85 requests "All documents and emails relating to all invoices produced by ACI for the license, use and/or maintenance of the New Technology from July 21, 2014 through the present, which includes the amount due, from whom, and the invoice date." ACI has agreed to produce invoices, but not emails. Due to Churchill's concerns about redactions, ACI proposes sending Churchill an exemplar of irrelevant or confidential client information that ACI intends to redact before completing its production. The conversation with counsel during the telephone conference indicates that the parties may be able to resolve the dispute as to this request. To the extent that the parties are unable to resolve their dispute, they may raise residual concerns in the joint status report filed after ACI's supplemental production is complete.

**Request for Production Nos. 86, 89 and 90**

Churchill's Request for Production No. 86 requests "All documents and emails relating to all fees paid to ACI by ACI's customers for the license, use and/ or maintenance of the New Technology from July 21, 2014 through the present, which includes the amount paid, by customer name, and date." Request Nos. 89 and 90 seek production of documents referenced by an employee of ACI during her deposition. Primarily, the parties disagree on the relevance, necessity, and burden on ACI to produce of "Oracle" reports. During the telephone conference, ACI's new counsel indicated he was not entirely familiar with the Oracle report generator, and believes that invoices and pricebook information would provide everything Churchill needs to determine royalties. Again, the conversation with counsel during the telephone conference indicates that the parties may be able to resolve this dispute. The Court will decline to compel ACI to produce Oracle reports at this time, subject to reconsideration after further dialogue between the parties and after ACI completes its supplemental production.

**Request for Production Nos. 94 and 95**

Churchill's Request for Production Nos. 94 and 95 request documents Churchill asserts are necessary to calculate a 15% payment on license, use and/or maintenance of the New Technology on sublicenses granted by ACI prior to July 21, 2014, and on extensions or renewals. ([Filing No. 138-5 at pp. 11-12](#)). At the telephone conference, ACI represented that it has produced or intends to produce by April 13, 2018, the majority of items requested by Churchill, including invoices (which ACI characterizes as the "best evidence"). Churchill notes that ACI's profit and loss statements are admittedly not "essential" to calculate royalties but more of a "check." The Court will not compel ACI to produce its profit and loss statements at this time, subject to Churchill's reassertion after ACI has completed its supplemental production.

In sum, ACI has agreed to produce documents responsive to most of Churchill's discovery requests. The remainder of the disputed requests appear capable of resolution between the parties during ACI's supplemental production. As discussed during the telephone conference, the parties shall file a joint status report on or before April 27, 2018, to inform the Court whether any disputes remain. If disputes remain, or if new disputes arise, the parties shall contact the undersigned magistrate judge's chambers to schedule a telephone conference to discuss the disputes. Accordingly,

**IT IS ORDERED:**
1. ACI shall produce the master agreements with attachments responsive to Request for Production No. 82 on or before **March 30, 2018**;
2. ACI shall complete its supplemental rolling production of documents responsive to the remaining Requests for Production, as discussed during the telephone conference and set forth above, on or before **April 13, 2018**;
3. The parties shall file an updated joint status report regarding ACI's production of documents by **April 27, 2018**;
4. The parties shall contact the undersigned magistrate judge's chambers after preparing the joint status report to schedule a telephone conference to discuss any outstanding discovery disputes;

5. Churchill's Motion to Compel Post-Termination Royalty Discovery ([Filing No. 135](Filing No. 135)) is denied without prejudice to reassertion after it reviews ACI's supplemental production and after the telephone conference in paragraph 4 is held. Additional briefing on issues previously raised and addressed in briefing on the Motion to Compel will not be permitted without leave of Court; and

6. Motions concerning discovery disputes shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference to discuss the parties' dispute.

DATED this 23rd day of March, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge