# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ACI WORLDWIDE CORP., <br><br> Plaintiff, <br><br> vs. <br><br> CHURCHILL LANE ASSOCIATES, LLC, <br><br> Defendant. | 8:14CV249 <br><br> MEMORANDUM <br> AND ORDER |

This matter is before the Court on the Motion for Partial Summary Judgment, ECF No. 228, filed by Defendant Churchill Lane Associates, LLC, and the Motions to Exclude Opinion Testimony, ECF Nos. 234 & 237, filed by Plaintiff ACI Worldwide Corp. For the reasons stated below, the Motion for Partial Summary Judgment will be granted in part, and the Motions to Exclude will be denied.

## BACKGROUND

The following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56. The Court has also drawn facts from its prior Memoranda and Orders, ECF Nos. 109 & 182, and the Court of Appeals' opinion, ECF

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

No. 115, *ACI Worldwide Corp. v. Churchill Lane Assocs., LLC*, 847 F.3d 571 (8th Cir. 2017).

Nestor, Inc., developed and acquired a series of credit card fraud detection software products and, in February 2001, entered into a License Agreement with ACI, wherein Nestor granted ACI a license "to copy, use, modify, enhance, market, sub-license [ ], maintain, and support the Software Products," subject to certain terms and conditions. License Agreement § 2.1, ECF No. 52, Page ID 398. The License Agreement also specifically permitted ACI to use the Software Products to develop its own software, which the License Agreement refers to as "New Technology," but Nestor retained ownership of any New Technology and the New Technology was deemed licensed to ACI by Nestor as if it were part of the Software Products. *Id.* § 2.3. Section 2.1 of the License Agreement provided that "[a]ny ACI "Affiliate"[2] may exercise any of ACI's rights hereunder." *Id.* § 2.1. ACI agreed to pay Nestor periodic royalties in the amount of fifteen percent of any sublicensing and maintenance fees ACI or its Affiliates received from their customers for using the Software Products. *Id.*, Attach. A § 1.5, ECF No. 52, Page ID 406.

Section 9.2 of the Licensing Agreement permitted either Nestor or ACI to terminate the License Agreement if the other became insolvent, and § 9.3 provided that, "[n]otwithstanding any termination of this Agreement, the License and any sublicenses shall continue in effect with respect to any sublicenses granted by ACI prior to termination; and ACI shall remain liable to Nestor for royalties accruing with respect thereto." License Agreement, ECF No. 52, Page ID 402.

---

[2] Section 1.1 of the Licensing Agreement defines "Affiliates" as "any corporation that (a) directly or indirectly controls, is controlled by, or is under common control with the party." ECF No. 52, Page ID 398.

In 2002, Nestor and ACI executed Amendment 2 to the Licensing Agreement, ECF No. 52, Page ID 416-17, wherein ACI agreed that Nestor could assign its royalty rights to a third party. At some point thereafter, Nestor notified ACI that it had sold and assigned its royalty rights to Churchill, and ACI began paying the royalties to Churchill directly. In 2008, Nestor sold and assigned all its rights in the New Technology to ACI for $500,000. In 2009, Nestor became insolvent, went into receivership, and sold all its remaining rights in the License Agreement and the Software Products to American Traffic Solutions.

ACI sought to acquire the royalty rights from Churchill, but Churchill declined ACI's offers. On July 20, 2014, ACI acquired from American Traffic Solutions Nestor's remaining rights, title, and interest in the License Agreement and the Software Products. The next day, July 21, 2014, ACI terminated the License Agreement and took the position that it unilaterally and simultaneously amended the License Agreement to eliminate its obligation to pay Churchill post-termination royalties under § 9.3. ACI also sent Churchill a check for $967,736.02 as a full and final payment of royalties, but Churchill did not deposit the check.

ACI filed this action seeking a declaratory judgment to determine its rights and obligations under the Licensing Agreement, and Churchill counterclaimed for breach of contract. On review of this Court's ruling on the parties' motions for summary judgment, ECF Nos. 109 & 110, the U.S. Court of Appeals for the Eighth Circuit concluded that although ACI validly terminated the License Agreement, "ACI did not validly amend the License Agreement to eliminate the post-termination royalties provision, and royalties are still due to Churchill for any sublicenses granted by ACI prior to July 21, 2014." 847 F.3d at 576-77. Specifically, the Eighth Circuit found that Churchill acquired the "legal

3

protections of a third-party beneficiary or assignee[,]" meaning "neither ACI nor Nestor could prejudice Churchill's rights to the royalties without Churchill's consent." *Id.* at 578-79. ACI does not, however, "owe Churchill royalties on any sublicenses that ACI has granted since July 21, 2014 or that it will grant in the future." *Id.* at 583. The case was remanded for further proceedings.

At some point following the Eighth Circuit's January 27, 2017, ruling, ACI and at least five of its Affiliates executed Mutual Termination agreements. ECF No. 231-1, Page ID 3197-3215. Each of these agreements recited the facts above and stated that the existing agreements by which ACI and its Affiliates sublicensed the Software Products to their customers were terminated retroactively, effective July 21, 2014—the date ACI terminated the License Agreement. According to ACI, it and its Affiliates terminated the sublicenses with their customers effective July 21, 2014, and then granted the same customers new licenses that are not subject to the License Agreement's post-termination royalty provision in § 9.3. Yet ACI and its Affiliates permitted the customers to use the Software Products without interruption.

A bench trial to determine ACI's post-termination royalty obligations and the amount of royalties to which Churchill is entitled is scheduled for the week of April 16, 2019. In its Motion for Partial Summary Judgment, Churchill asks the Court to find that

> 1. Section 9.3 of the License Agreement is unambiguous and requires ACI to pay post-termination royalties to Churchill on all license and maintenance fees paid by customers of ACI and its affiliates that had a

4

sublicense to the New Technology[3] as of July 21, 2014 until such time as the customer ceases possessing and using the New Technology[;][4]

    2. The purported "mutual terminations" executed by ACI and its affiliates in 2017 have no effect on Churchill's right to post-termination royalties pursuant to § 9.3 of the License Agreement[;] [and]

    3. Churchill is entitled to partial judgment on undisputed pre-termination royalties in the amount of $967,736.02, together with pre-judgment interest under applicable New York law at the rate of 9% per annum or $238.62 per day from July 21, 2014 until the date this Court enters judgment.

Mot. for Partial Summ. J., ECF No. 228.[5]

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for

---

[3] As ACI points out, it is unclear why Churchill used the term New Technology, which is a subset of the Software Products. The License Agreement treats New Technology the same as the Software Products. License Agreement § 2.3, ECF No. 52, Page ID 398 ("All New Technology shall . . . be deemed licensed by Nestor to ACI under the License as if it were part of the Software Products."). Accordingly, the Court will use the term Software Products.

[4] Presumably, Churchill does not take the position that it is entitled to royalties where a customer continues to possess and use the Software Products without permission from ACI or an ACI Affiliate. Thus, the Court understands Churchill's position to be that it is entitled to post-termination royalties on the sublicenses granted by ACI or its Affiliates to their customers prior to July 21, 2014, for so long as ACI or its Affiliate permits the customers to possess and use the Software Products.

[5] The Motion includes a fourth request, that the Court find "Churchill is entitled to ongoing royalty payments from ACI under § 9.3 of the License Agreement in accordance with the Court's holdings in paragraphs 1 and 2, above." This fourth request requires no separate analysis at this juncture.

summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor."  *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)).  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."  *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The moving party need not produce evidence showing "the absence of a genuine issue of material fact."  *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325).  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial."  *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).  "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment.  *Dick v. Dickinson State Univ.*, 826

6

F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### I. Interpretation of § 9.3 of the License Agreement

The License Agreement is governed by New York law, which provides that "[w]hen the parties have a dispute over the meaning [of a contract's language], the court first asks if the contract contains any ambiguity, which is a legal matter for the court to decide." *MPEG LA, LLC v. Samsung Elecs. Co.*, 86 N.Y.S.3d 4, 8 (N.Y. App. Div. 2018). "Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation[.]" *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011). In determining whether language is ambiguous, "the contract must be considered as a whole[,]" *NRT New York, LLC v. Harding*, 16 N.Y.S.3d 255, 258 (N.Y. App. Div. 2015) (quoting *Id.*), and the Court may not look to outside sources, *Samsung*, 86 N.Y.S.3d at 8. "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H.*, 951 N.E.2d at 746. The

7

"construction and interpretation of an unambiguous contract, are issues of law within the province of the court[.]" *Harding*, 16 N.Y.S.3d at 258 (citing *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)).

ACI validly terminated the License Agreement on July 21, 2014, *ACI*, 847 F.3d at 581, and the parties dispute the meaning of the post-termination royalty provision in § 9.3. Section 1.5 of Attachment A to the Licensing Agreement provides, in relevant part, that "ACI shall pay to Nestor 15% of all fees paid for license and maintenance [ ] of the Software Products from sub-licensing the Software Products or software containing any part of the Software Products[.]" ECF No. 52, Page ID 406. Section 9.3 provides:

> Upon the termination of this Agreement by either party, ACI shall [(a)] cease all marketing and sublicensing activities under the Agreement, (b) within (10) calendar days pay all amounts due and outstanding hereunder and (c) deliver to Nestor or its designee all copies of the Software Products within ACI's possession, custody or control (together with a certificate of an officer of ACI certifying such delivery); provided ACI may retain sufficient copies of the Software Products to be able to support, maintain and enhance the Software Products that have been sublicensed to customer prior to the termination until such time as such sublicenses shall expire or terminate.
>
> Notwithstanding any termination of this Agreement, the License and any sublicenses shall continue in effect with respect to any sublicenses granted by ACI prior to termination; and ACI shall remain liable to Nestor for royalties accruing with respect thereto. Termination of this Agreement and the License shall not release ACI from any of its obligations, or liabilities accrued, or incurred under this Agreement, or rescind or give rise to any right to rescind any payment made or other consideration given hereunder.

ECF No. 52, Page ID 402.

The language of the post-termination royalty provision in § 9.3 is unambiguous. Sublicenses granted by ACI and its Affiliates to their customers do not automatically terminate upon termination of the License Agreement. ACI is obligated to pay Churchill

royalties on any fees it receives in connection with sublicenses granted before July 21, 2014, until and unless such sublicenses expire or terminate according to their own terms.

Churchill contends that § 9.3's post-termination royalty provision unambiguously provides that a sublicense continues so long as ACI or its Affiliate permits a customer to possess and use the Software Products. As a corollary, Churchill argues that, under § 9.3, a sublicense is neither terminated nor expired unless and until ACI or its Affiliate no longer permits the customer to possess and use the Software Products and the customer returns possession to ACI or its Affiliate. Thus, according to Churchill, a customer's possession and use of the Software Products with ACI's consent is the sole factor that determines ACI's post-termination royalty obligation.

Section 2.4 of the License Agreement required ACI and its Affiliates to grant the sublicenses pursuant to a separate form agreement; thus, for purposes of ACI's post-termination royalty obligation under § 9.3, it is clear the parties intended the sublicenses to continue in accordance with, and subject to, the terms of the agreements by which ACI or its Affiliates granted the sublicenses.[6] *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and reading the contract as a whole."). Therefore, the sublicenses expire, or may be terminated, according to the terms of the agreements by which they were granted. Any license of the Software Products granted

---

[6] The parties have not produced any of the agreements by which ACI or its Affiliates sublicensed the Software Products.

9

by ACI after such expiration or valid termination may be free and clear of § 9.3's post-termination royalty provision.

Accordingly, the first requested finding listed in Churchill's Motion for Partial Summary Judgment is denied.

## II. Effect of the Mutual Termination Agreements

As the Court noted in its previous Memorandum and Order, two parties are free to terminate an agreement upon mutual assent. ECF No. 182, Page ID 2524-25. Thus, ACI, its Affiliates, and their customers may agree to terminate any contracts or sublicenses between them, but such an agreement does not eliminate ACI's obligations, or Churchill's rights, under § 9.3. *Cf. ACI*, 847 F.3d at 579 ("Churchill acquired the legal protections of a third-party beneficiary or assignee" with respect to its royalty rights, and "ACI could not thereafter impair Churchill's rights by amending the post-termination royalties provision without Churchill's consent.").

Whether the Mutual Termination agreements have any effect on the *amount* to which Churchill is entitled for post-termination royalties depends on whether the Mutual Termination agreements validly terminated the sublicenses ACI and its Affiliates granted to their customers before July 21, 2014, consistent with the terms of the sublicense agreements. *See supra* Section I. Because the parties have not produced the agreements by which ACI and its Affiliates granted their customers sublicenses to use the Software Products, the Court is unable to determine whether the Mutual Terminations validly terminated those sublicenses.

Accordingly, the second requested finding listed in Churchill's Motion for Partial Summary Judgment is granted to the following extent: The Mutual Termination

10

agreements, ECF No. 231-1, Page ID 3197-3215, executed by ACI and its Affiliates, respectively, did not eliminate ACI's obligations, or Churchill's rights, under the post-termination royalty provision of § 9.3 of the License Agreement.

### III. Pre-termination Royalties

The parties do not dispute that ACI currently owes Churchill an amount for royalties that accrued prior to ACI's termination of the License Agreement, and, on July 21, 2014—the date ACI terminated the License Agreement—ACI sent Churchill a check in the amount of $967,736.02. ECF No. 231-1, Page ID 3182-83. With the check, ACI sent Churchill a letter that explained:

> Enclosed is a summary of amounts payable for activity under the license agreement through July 21, including the customary detailed reports. Also enclosed is a check in the amount of $967,736.02 representing the balance of the amount set forth on the schedule and the full and final payment of all amounts payable under the license agreement.

*Id.* at 3182. Churchill did not deposit the check because it believed the sum represented pre-termination royalties due and did not include amounts that were due, or might become due, for post-termination royalties. Accordingly, Churchill agues it is "entitled to partial summary judgment on undisputed pre-termination royalties in the amount of $967,736.02, together with pre-judgment interest under applicable New York law at the rate of 9% per annum or $238.62 per day from July 21, 2014 until the date this Court enters judgment." Mot. for Partial Sum. J., ECF No. 228.

It is not genuinely disputed that ACI owes Churchill $967,736.02 in pre-termination royalties. ECF No. 231-1, Page ID 3182-83. The only genuine dispute is whether $967,736.02 represents the amount due for pre-termination royalties, exclusively, or the

11

amount due for both pre-termination and post-termination royalties. *See* ACI Br., ECF No. 249 ¶ 22, Page ID 4487.

ACI opposes summary judgment on this issue of partial liability because it is not "prudent" and "makes no sense" to rule on this issue before trial. ACI Br., ECF No. 249, Page ID 4504. Yet Rule 56(a) expressly provides for partial summary judgment; Churchill is entitled to pre-termination royalties under the License Agreement; and Churchill provided sufficient evidence demonstrating that the amount of pre-termination royalties due and owing is $967,736.02, which ACI did not dispute with competing evidence.

With respect to interest, New York law provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]" N.Y. C.P.L.R. § 5001 (McKinney). Interest is "computed from the earliest ascertainable date the cause of action existed," *id.*, and "shall be at the rate of nine per centum per annum, except where otherwise provide by statute." N.Y. C.P.L.R. § 5004 (McKinney). According to Churchill, $967,736.02 "became due and owing on July 21, 2014[,]" and the interest due on that amount from July 21, 2014, through December 31, 2018, is $389,189.22. ACI did not address the issue of interest in its opposition brief.

Although ACI terminated the License Agreement on July 21, 2014, payment on pre-termination royalties was not due until ten days after termination. License Agreement § 9.3(b), ECF No. 52, Page ID 402. Thus, with respect to pre-termination royalties, it appears that Churchill's cause of action did not exist on July 21, 2014, but sometime thereafter. Churchill has not otherwise demonstrated that its cause of action existed on July 21, 2014, and its interest calculation is based on that date.

Accordingly, the Court finds Churchill is entitled to partial summary judgment on its breach-of-contract claim in the amount of $967,736.02, exclusive of interest, for royalties due under the License Agreement prior to its termination. The third requested finding in Churchill's Partial Motion for Summary Judgement will, therefore, be granted, in part.

## IV.  Motions to Exclude Opinion Testimony

ACI moved to exclude the opinions of Anthony Eitzmann, ECF No. 234, and Edward Morse, ECF No. 237, under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

These motions will be denied because ACI argues for exclusion under an evidentiary standard that is stricter than the standard applicable in this case. "In a bench trial," the trial court is given "'wide latitude in determining whether an expert's testimony is reliable,'" *Tussey v. ABB, Inc.*, 746 F.3d 327, 337 (8th Cir. 2014) (quoting *Khoury v. Phillips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010)), and *Daubert's* application is "relax[ed]," *id.* (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)). ACI has not demonstrated that Eitzmann's or Morse's opinions should be excluded, in limine, under the applicable standard. Accordingly, ACI's Motions to Exclude Opinion Testimony will be denied, without prejudice and subject to reassertion at trial.

IT IS ORDERED:

1. The Motion for Partial Summary Judgment, ECF No. 228, filed by Defendant Churchill Lane Associates, LLC, is granted, in part, as follows:

   a. The Mutual Termination agreements, ECF No. 231-1, Page ID 3197-3215, executed by ACI and its Affiliates did not eliminate ACI's obligations, or Churchill's rights, under the post-termination royalty provision of § 9.3 of the License Agreement;

b.  Churchill is entitled to partial summary judgment on its breach of contract claim in the amount of $967,736.02, exclusive of interest, for royalties due under the License Agreement prior to its termination;

The Motion for Partial Summary Judgment is otherwise denied;

2.  The Motions to Exclude Opinion Testimony, ECF Nos. 234 & 237, filed by Plaintiff ACI Worldwide Corp., are denied; and

3.  The Motion for Hearing, ECF No. 246, is denied as moot.

Dated this 4th day of March 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge